J-S95017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: E.C. A/K/A E.J.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.S., FATHER | No. 2155 EDA 2016 |

Appeal from the Decree June 13, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000427-2016
CP-51-DP-0002711-2014

BEFORE:  STABILE, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:            **FILED FEBRUARY 22, 2017**

J.S. ("Father") appeals from the June 13, 2016 decree entered in the Philadelphia County Court of Common Pleas terminating his parental rights to E.C. ("Child"), born in November 2014.  We affirm.

The trial court made the following factual findings:

> [I]n November . . . 2014, [the Department of Human Services ("DHS")] received a substantiated General Protective Services (GPS) report alleging that the mother had given birth to the child, E.C. and the mother tested positive for drugs.  The mother had a long history of drug abuse.  The mother was not participating in a drug/alcohol treatment program.  Furthermore, the report alleged that the mother did not have appropriate baby supplies for the child.  The mother and the father, J.S. resided together.
>
> On November 18, 2014, DHS obtained an Order for Protective Custody [("OPC")] for E.C.

On November 19, 2014, the child was released from the hospital and placed in foster care.

A shelter care hearing was held on November 20, 2014 before Master Alexis [Ciccone]. Master Ciccone lifted the OPC and ordered the temporary commitment of E.C. to the care and custody of DHS.

On November 26, 2014, an adjudicatory hearing was held before Master Lynne M. Summers. Master Summers adjudicated E.C. dependent and committed him to the care and custody of DHS.

The matter was listed on a regular basis before Judges of the Philadelphia Court of Common Pleas – Family Court Division – Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. §6351, and evaluated for the purpose of determining or reviewing the permanency plan of the child.

In subsequent hearings, the [Permanency Review Orders] reflect the Court's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

On January 28, 2016, a Permanency Review hearing was held before the Honorable Jonathan Q. Irvine. The father did not attend the hearing. The father's attorney was present. A Termination of Parental Rights hearing was scheduled for June 13, 2016.

On May 16, 2016, DHS attempted to serve a subpoena to the father for the termination hearing scheduled on June 13, 2016. DHS obtained the service address from a Parent Locator Service Report (PLS) dated February 3, 2016. The return of service indicated that the father no longer lived at the address where the subpoena was served.

On May 16, 2016, DHS attempted to serve a second subpoena to the father for the hearing on June 13, 2016. DHS obtained the service address from a PLS dated May 9, 2016. The return service indicated that the service address did not exist. It was a vacant lot.

On May 26, 2016, DHS made service to the father for the hearing on June 13, 2016. The subpoena indicated that

the hearing was scheduled to be heard at ONE o'clock P.M. Service of the subpoena was made by way of UPS overnight shipping. The package containing the subpoena was left at the front door on May 27, 2016. DHS obtained the father's current address from a PLS dated May 23, 2016.

On June 13, 2016, a Termination of Parental Rights hearing for the father, J.S., was held in this matter. The Court found by clear and convincing evidence that the father's parental rights of E.C. should be terminated pursuant to the Pennsylvania Juvenile Act. Furthermore, the Court held that it was in the best interest of the child that the goal be changed to adoption.

1925(a) Opinion, 8/30/16, at 1-2 ("1925(a) Op.") (unpaginated) (emphasis in original).

On July 12, 2016, Father timely filed a notice of appeal. Father argues on appeal that DHS failed to meet its burden because Father had completed almost all of his permanency goals.

We review a trial court's order terminating parental rights for an abuse of discretion. **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012). An abuse of discretion "does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id.** (internal citations omitted).

The Pennsylvania Supreme Court has explained the reason for applying a particularly deferential standard to termination decisions:

[U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record,

- 3 -

where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (internal citations omitted). "The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so." *In re Z.P.*, 994 A.2d 1108, 1116 (Pa.Super. 2010).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

The trial court found two grounds for termination of Father's parental rights, 23 Pa.C.S. §§ 2511(a)(1) and (2). However, we need only agree

with the trial court's determination as to one subsection of section 2511(a) in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Thus, we will analyze the trial court's decision to terminate under section 2511(a)(2), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2). To terminate parental rights pursuant to section 2511(a)(2),

> the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003)).

Father claims that DHS failed to prove by clear and convincing evidence the requirements of section 2511(a)(2) because he was close to achieving his single case plan ("SCP") objectives.

Here, the trial court found that DHS met its burden under section 2511(a)(2). In particular, it found:

> [The Community Umbrella Agency ("CUA")] social worker testified that she informed the father of his SCP objectives in person, through phone calls and through text messages. The father was also invited to all of the SCP meetings. The father failed to attend any of the SCP meetings. The father did not complete anger management. Anger management was an objective because the father was threatening the kinship parents at his visits with the child. Additionally, when visits were moved to the agency, the father had an altercation with the social worker. Furthermore, as a result of the father's behavior, the visits were changed from supervised at the CUA to supervised at DHS. The visits were changed to DHS so that proper security could be provided. Moreover, the father did not visit the child after March, 2016. The social [*sic*] CUA social worker testified that the father indicated that he did not attend visits was [*sic*] because he had a new job. Additionally, the CUA worker testified that the father would "let him know" about visits. Moreover, the father failed to respond to telephonic text messages sent to the father regarding visits. The social worker testified that during visits when the child cried for the kinship parent – the father would end the visit. The social worker testified that the father would say "I want to cut the visit short because the baby is crying." Lastly, the father did not have appropriate housing. The social worker testified that the father was evicted from his home. The father would not provide a new address to the social worker.

1925(a) Op. at 4 (internal citations omitted).

The trial court's findings are supported by the record. The evidence at the hearing showed that Father failed to complete his SCP objectives. N.T., 6/13/16, at 20-21, 23. The August 3, 2015 permanency review order indicates that Father was ordered to complete anger management and parenting classes. Although Father completed parenting classes, he did not

complete anger management classes.[1] N.T., 6/13/16, at 16-17. Furthermore, he ceased visits with Child for two months because he had a new job, but never followed up to reschedule lost visits or schedule future visits at a time that would not conflict with his work schedule. Additionally, after being evicted from his housing, he refused to provide a new address.

During Child's 18 months of life, he has never been in Father's care or control. N.T., 6/13/16, at 23. Child has been in placement for his entire life, and Father has only had limited contact with him. Father has continuously failed to demonstrate a willingness or ability to parent Child. "The courts of this Commonwealth have long held that a child's life simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa.Super. 2008) (internal quotations omitted). Based upon Father's poor visitation history and seeming lack of interest in Child, the trial court reasonably concluded that Father will not remedy the causes of his failure to provide parental care to Child, and that DHS met its burden under section 2511(a)(2).

We next turn to section 2511(b), which we have described as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental,

---

[1] Father began attending anger management classes, but never completed them. N.T., 6/13/16, at 17.

physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

**C.D.R.**, 111 A.3d at 1219 (quoting **In re N.A.M.**, 33 A.3d 95, 103 (Pa.Super. 2011)) (citations and internal quotations omitted).

In his brief, Father does not argue that the trial court abused its discretion in finding that the requirements of section 2511(b) have been met. He, therefore, has waived any claim related to section 2511(b). **See Commonwealth v. Santiago**, 980 A.2d 659, 662 n.3 (Pa.Super. 2009) (claim waived where appellant fails to include argument to support issue).

Even if Father had not waived this claim, we agree with the trial court that it was in Child's best interests to terminate Father's parental rights.[2] The trial court found that:

> the child, E.C., has been in placement for his entire life, eighteen months. The testimony established that termination of the father's parental rights would not cause permanent emotional harm to the child. Furthermore, it is in the best interest of the child to terminate the father's parental rights.

1925(a) Op. at 4. The trial court further found that:

> the child, [E.C.], is in a pre-adoptive kinship home with his maternal grandparents. The child does not have a significant or necessary parental bond with the father. The child has a parent-child relationship with the kinship parents. The interactions between the child and the kinship parents are loving, caring and bonding. The child is safe in the home with his needs being met. Furthermore, the child would not suffer permanent emotional harm if the father's rights were terminated. Moreover, it is in the best interest of the child to terminate the father's parental rights and free the child for adoption.

*Id.* at 5.

We conclude that the trial court neither erred nor abused its discretion in terminating Father's parental rights.

Decree affirmed.

_____

[2] *See In re C.L.G.*, 956 A.2d 999, 1010 (Pa.Super. 2008) (*en banc*) (considering section 2511(b) despite appellant's failure to challenge trial court's analysis).

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/22/2017